1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   KEITH HARD,                          No.  2:14-cv-01948-TLN-CMK

12              Plaintiff,

13        v.                              **ORDER**

14   Bank of New York Mellon, As Trustee of    **ORDER GRANTING IN PART**
     First Horizon Alternative Mortgage        **DEFENDANTS' MOTION TO DISMISS**
15   Securities Trust 2006-FA7 Mortgage Pass-
     Through Certificates, Series 2006-FA7;
16   First Horizon Home Loan Corporation; and
     DOES 1 through 50, inclusive,
17
                Defendants.
18

19
         This matter is before the Court pursuant to Defendant Bank of New York Mellon, as
20
     Trustee of First Horizon Alternative Mortgage Securities Trust ("BNY Mellon") and First
21
     Horizon Home Loan Corporation ("Horizon") (together "Defendants") Motions to Dismiss
22
     Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).
23
     (Defs.' Mot. to Dismiss Pl.'s First Am. Compl., ECF No. 22.)  For the reasons set forth below,
24
     Defendants Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.
25
         **I.      FACTUAL BACKGROUND**
26
         The claims in this case arise out of Defendants alleged breach of a loan modification
27
     agreement associated with Plaintiff's residential mortgage loan.  The residence is located at 4211
28

                                          1

1   Leftout Lane, Chico, California 95973 ("Subject Property").  (ECF No. 21 at ¶ 2.)  The FAC

2   alleges that at all relevant times BNY Mellon is the purported trustee of the securitized trust "that

3   alleges to own all of the beneficial interest in Plaintiff's Deed of Trust."  (ECF No. 21 at ¶ 3.)

4   Horizon was the purported Master Servicer of Plaintiff's loan as appointed by the Trust.  (ECF

5   No. 21 at ¶ 5.)

6        The facts underlying Defendants' motion are as follows.  In or about December 13, 2005,

7   Plaintiff attained a loan in the amount of $540,000 from Horizon.  (ECF No. 23 at 8.)  In part,

8   Plaintiff's loan was memorialized by a promissory note and secured by a Deed of Trust.  (ECF

9   No. 23 at 8.)  Sometime thereafter, Plaintiff defaulted on his loan and consequently, on December

10  30, 2009, "a notice of default was recorded."  (ECF No. 23 at 8.)  On June 16, 2011, "[a] notice of

11  trustee's sale was recorded" and set a sale date for July 11, 2011.  (ECF No. 23 at 8.)  On

12  September 12, 2011, "[t]he property proceeded to trustee's sale … and reverted back to [BNY

13  Mellon] as the foreclosing beneficiary."  (ECF No. 23 at 8.)  In or around December 2011, BNY

14  Mellon sold the Subject Property to a third-party.  (ECF No. 23 at 8.)

15       Plaintiff's FAC alleges as follows.  After Plaintiff obtained the loan from Defendants in

16  December 2005, pursuant to the terms of the Trust's pooling and servicing agreement, the Trust's

17  closing date was October 30, 2006.  (ECF No. 21 at ¶ 15.)[1]  Thereafter, although the FAC does

18  not allege the specific dates, sometime in 2009 Plaintiff applied for numerous loan modifications.

19  (ECF No. 21 at ¶ 20.)  In order to successfully obtain a modification, Plaintiff retained the

20  services of attorney Kristen Kelsch to "ensure that the applications were submitted complete and

21  correct."  (ECF No. 21 at ¶ 21.)  Kelsch wrote letters and made telephone calls to Defendants to

22  follow up on Plaintiff's loan modification applications.  (ECF No. 21 at ¶ 21.)  Defendants

23  repeatedly asserted to Plaintiff "that documents had either not been received or they were

24  incomplete" despite Kelsch resubmitting the documents over and over again.  (ECF No. 21 at ¶

25  21.)

26  [1]    For clarity, the Court will refer to activity by BNY Mellon or Horizon solely as activity by Defendants.
27  Moreover, a 'pooling and servicing agreement' is an agreement creating a trust that defines the terms under which
    promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and
28  related loan documents are transferred by and between the parties to the trust, and sets forth the various
    responsibilities of the parties to the trust.

2

1   On March 2, 2010, "there was an attempt to transfer the Deed of Trust on the [Subject

2   Property] to the [Trust]" and accordingly to Defendants.  (ECF No. 21 at ¶ 18.)  In or around

3   April 23, 2010, Defendants pre-approved Plaintiff for a Trial Period Plain (TPP) Agreement.[2]

4   (ECF No. 21 at ¶ 22.)  The TPP states that Plaintiff was eligible for a trial modification on his

5   loan, so long as he made three consecutive payments in the amount of $2,908.43 for the months

6   of June, July, and August of 2010.  (ECF No. 21-1 at 2.)  The offer also states that all payments

7   had to be made on time and Plaintiff had to mail two signed copies of the TPP to specified

8   locations to qualify for a permanent loan modification.  (ECF No. 21-1 at 2.)  Plaintiff alleges that

9   he complied with the terms of the TPP by mailing the requested documents and by making all

10   three payments on time.  (ECF No. 21 at ¶ 22.)  The TPP also states "[a]s long as you comply

11   with the terms of the [TPP], we will not start foreclosure proceedings or conduct a foreclosure

12   sale if foreclosure proceedings have started."  (ECF No. 21 at ¶ 37.)

13   After making the third payment, Plaintiff alleges he tried to contact Defendants "to

14   determine when he would expect the permanent loan modification."  (ECF No. 21 at ¶ 22.)

15   Plaintiff alleges that because Defendants did not respond, he continued to make payments in the

16   amount of $2,908.43 from September through December of 2010.  (ECF No. 21 at ¶ 22.)  "Not

17   knowing whether these payments were being credited to his account or not, and not receiving the

18   permanent modification, [Plaintiff] stopped making payments."  (ECF No. 21 at ¶ 22.)

19   The FAC sets forth that between March 5, 2011, and July 1, 2011, Plaintiff received four

20   letters from Defendants requesting documents, which he contends he had previously submitted.

21   (ECF No. 21 at ¶¶ 23–27.)  Specifically, on March 5th, Plaintiff received a letter from Defendant

22   Horizon's employee Chris Apperson, representing an attempt to collect a debt.  (ECF No. 21-1 at

23   7.)  The letter states: "We have received no response from you on the recent call or letter

24   previously sent to you requesting additional information."  (ECF No. 21 at ¶ 23.)  Plaintiff asserts

25   that Defendants did not attempt to call or mail letters to Plaintiff.  (ECF Nos. 21-1 at 7 & 21 at ¶

26   _____

[2]   Plaintiff attaches the TPP (along with five letters from Horizon and a Trustee's Deed Upon Sale) to his
27   FAC, and Defendants do not oppose any of these exhibits.  (ECF No. 23 at 8–9.)  Thus, the Court will consider and
rely upon the facts contained within the exhibits in its analysis.  *See* Fed. R. Evid. 201(b)(2) (A court may take
28   judicial notice of a fact that is not reasonably disputed if it "can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned.").

23.)  On March 12, 2011, Plaintiff received the second letter from the Defendants' "Loss

Mitigation Department."  (ECF No. 21-1 at 12.)  The letter states: "Please be advised, that your

recent request for Loss Mitigation Assistance has been declined.  The information you submitted

is incomplete." (ECF No. 21-1 at 12.)  The letter requested Plaintiff to submit several documents

that Plaintiff "had submitted repeatedly during his initial application." (ECF No. 21 at ¶ 25.)  On

March 14, 2011, Plaintiff received a third letter from Defendants and again, the correspondence

requested Plaintiff to submit documents and information "which [Defendants] had requested, and

[Plaintiff] had submitted repeatedly, almost one year prior while applying for the original loan

modification."  (ECF No. 21 at ¶ 24.)  On June 24, 2011, Plaintiff received the fourth letter from

Defendants, stating that the information sent by Plaintiff was incomplete and asked Plaintiff to

submit "all of the information we requested for reconsideration."  (ECF No. 21-1 at 14.)

Thereafter, Plaintiff received two more letters from Defendants indicating mitigation

assistance.  Specifically, in or around July 1, 2011, the first letter stated: "We have received your

workout package for review" and the average review period is approximately 30–45 days.  (ECF

No. 21-1 at 17.)  However, the FAC does not explain what prompted this letter or whether

Plaintiff actually sent Defendants a new package for review.  On July 21, 2011, Plaintiff allegedly

received another letter from Defendants, stating "[Y]ou are eligible for the Trial Period

Modification."  (ECF No. 21 at ¶ 28.)  Plaintiff alleges "[t]his Agreement was rejected as it

included significant late fees and costs."  (ECF No. 21 at ¶ 28.)  Finally, on September 12, 2011,

the Subject Property was sold at a foreclosure sale.  (ECF No. 21 at ¶ 30.)

In sum, the following are Plaintiff's essential claims.  Plaintiff alleges that because he

complied with the obligations within the TPP, Defendants breached the agreement by: (1) not re-

reviewing Plaintiff for his modification; and (2) foreclosing on the Subject Property.  (ECF No.

21 at ¶¶ 22, 37.)  In addition, Plaintiff alleges that on March 2, 2010, the attempt to transfer the

Deed of Trust on his property to Defendants was void.  (ECF No. 21 at ¶ 18.)

**II.    PROCEDURAL HISTORY**

On July 16, 2014, Plaintiff filed a complaint in the Superior Court of California in Butte

County.  (ECF No. 1-1 at 2.)  On August 21, 2014, Defendants filed a notice of removal to this

4

1    Court.  (Defs. Notice of Removal, ECF No. 1.)  Thereafter, on August 28, 2014, Defendants filed

2    a motion to dismiss Plaintiff's complaint.  (ECF No. 6.)  On March 5, 2015, Plaintiff requested

3    leave to file an amended complaint, and the Court granted his request on March 26, 2015.  (ECF

4    Nos. 18 & 20.)  Plaintiff filed the FAC on March 31, 2015, (ECF No. 21) and on April 24, 2015,

5    Defendants filed a motion to dismiss.  (ECF No. 22.)  In response, on June 4, 2015, Plaintiff filed

6    an opposition.  (ECF No. 27.)  Finally, on June 11, 2015, Defendants filed a reply to Plaintiff's

7    opposition.  (ECF No. 28.)

8        **III.   STANDARD OF LAW**

9        A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

10   12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

11   2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

12   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

13   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

14   defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic

15   v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

16   pleading standard relies on liberal discovery rules and summary judgment motions to define

17   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

18   534 U.S. 506, 512 (2002).

19       On a motion to dismiss, the factual allegations of the complaint must be accepted

20   as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of

21   every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.

22   *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

23   allege "'specific facts' beyond those necessary to state his claim and the grounds showing

24   entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the

25   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

26   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

27   544, 556 (2007)).

28       Nevertheless, a court "need not assume the truth of legal conclusions cast in the

5

1   form of factual allegations." *United States ex rel. Chunie v. RingrosHee*, 788 F.2d 638, 643 n.2

2   (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more

3   than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

4   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

5   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

6   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

7   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

8   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

9   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

10  459 U.S. 519, 526 (1983).

11      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged

12  "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697

13  (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims .

14  . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at

15  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

16  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

17  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

18  experience and common sense." *Id.* at 679.

19      In ruling upon a motion to dismiss, the court may consider only the complaint, any

20  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

21  Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu

22  Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

23  1998).

24      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

25  amend even if no request to amend the pleading was made, unless it determines that the pleading

26  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

27  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

28  *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

1   denying leave to amend when amendment would be futile).  Although a district court should

2   freely give leave to amend when justice so requires under Federal Rule of Civil Procedure

3   15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has

4   previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713

5   F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th

6   Cir. 2004)).

7      **IV.**    ANALYSIS

8          A.    <u>Breach of Contract (First Cause of Action)</u>

9      The FAC alleges that (1) Defendants failed to re-review Plaintiff for his modification after

10   he complied with the TPP and (2) Defendants sold the Subject Property at foreclosure, thereby

11   breaching the terms of the TPP.  (ECF No. 21 at ¶¶ 35, 37.)  The terms of the TPP agreement

12   state that Plaintiff had to make three trial plan payments of $2,908.43, submit two copies of the

13   executed agreement to Defendant Horizon, and upon making the third and final payment Plaintiff

14   was to contact Horizon "for a re-review of your modification."  (ECF No. 21-1 at 2–5.)

15   Consequently, Plaintiff alleges that because he complied with all terms within the TPP,

16   Defendants failed to perform their obligations pursuant to the agreement, including re-reviewing

17   Plaintiff for a permanent loan modification, and abstaining from foreclosing on the Subject

18   Property.  (ECF No. 21 at ¶ 35.)

19      Defendants contend that Plaintiff does not demonstrate that a binding contract existed

20   between the parties at the time of the trustee's sale because the parties did not intend for the TPP

21   to continue past the three month trial period.  (ECF No. 23 at 11.)  Additionally, Defendants argue

22   that Plaintiff fails to show that they did not perform the terms of the agreement because they did

23   perform a re-review of Plaintiff's potential modification when they "expressly denied Plaintiff

24   assistance in March 2011" and did not sell the Subject Property until after they completed the

25   review.  (ECF No. 23 at 11.)  In fact, Defendants assert that the letters Plaintiff attached to his

26   FAC show that they "actively reviewed Plaintiff for a modification . . . from at least March 2011

27   through July 2011."  (ECF No. 23 at 11.)

28      "A cause of action for breach of contract includes four elements: that a contract exists

1    between the parties, that the plaintiff performed his contractual duties or was excused from

2    nonperformance, that the defendant breached those contractual duties, and that plaintiff's

3    damages were a result of the breach."  *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 596

4    F. Supp. 2d 1351, 1363 (E.D. Cal. 2009).  The Ninth Circuit has held that a TPP may constitute a

5    contract, and "a party to that contract may sue for breach if the lender violates a term contained

6    within the four corners of the TPP."  *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883–84

7    (9th Cir. 2013).  "The holding in *Corvello* is intensely fact-dependent."  *Lazo v. Caliber Home*

8    *Loans, Inc.*, No. 1:13–cv–2015 AWI JLT, 2015 WL 590663, at *5 (E.D. Cal. Feb. 12, 2015).  The

9    Court addresses each element for a breach of contract claim in turn.

10          First, the FAC sets forth sufficient facts to support the allegation that the TPP constitutes a

11    contract between Plaintiff and Defendants.  Here, the relevant terms of the TPP state, "[o]nce

12    your final payment has been submitted, contact us for a re-review of your modification" and "[a]s

13    long as you comply with the terms of the Trial Period Plan, we will not start foreclosure

14    proceedings."  (ECF No. 21-1 at 2.)  The FAC alleges that after Plaintiff made his final payment,

15    and timely returned the requested documents, he contacted Defendants so they could re-review

16    his modification, thereby fulfilling Plaintiff's obligations pursuant to the TPP.  (ECF No. 21 ¶ 34;

17    ECF No. 21-1 at 2–5.)  In return, Plaintiff alleges Defendants did not re-review his modification

18    and foreclosed on the Subject Property.  (ECF No. 21-1 at 4.)

19          Defendants' contention that the TPP did not exist at the time of foreclosure because the

20    parties did not intend for the TPP to continue past the three month trial period is unpersuasive.

21    The three payments were a condition that Plaintiff had to fulfill in order for Defendants to "re-

22    review" the modification and refrain from foreclosing.  *See Corvello*, 728 F.3d at 883–84

23    (holding that once the plaintiff met all of the obligations under the TPP, the lender had to satisfy

24    its obligations).[3]  Therefore, the Court finds that Plaintiff sufficiently pled that a contract existed

---

[3]       Defendants also contend that the TPP in this case is unlike the TPP in Corvello because here, Defendants
did not offer the TPP through the Home Affordable Mortgage Program (HAMP).  (ECF No. 28 at 3.)  Defendants
insist that the *Corvello* holding only applies to TPPs that financial institutions offer through HAMP.  (ECF No. 28 at
3.)  However, California courts have applied the same reasoning in *Corvello* to TPPs that were not through HAMP.
*See Randell v. Flagstar Bank FSB*, No. 2:14–cv–1575–TLN, 2015 WL 2159595 (E.D. Cal. May 7, 2015); *see also*
*Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011).

1    between the parties.

2          The second element, whether the plaintiff performed his duties, is also met because as

3    explained earlier, the FAC alleges that Plaintiff made all three payments on time, submitted the

4    requested documents, and contacted Defendants for re-review of his modification pursuant to the

5    TPP.  (ECF No. 21 at ¶ 34.)  Accordingly, Plaintiff's allegations satisfy this element.

6          Plaintiff has also pled allegations that satisfy the breach element at the pleading stage.

7    Plaintiff alleges that Horizon failed to re-review his modification "as it was contractually

8    obligated to do."  (ECF No. 21 at ¶ 35.)  Moreover, Defendants sold the Subject Property on

9    September 12, 2011, which the TPP agreement states Defendants would not do if Plaintiff

10   performed all obligations pursuant the agreement.  (ECF No. 21-1 at 4.)  In their briefing,

11   Defendants make the argument that the letters from March 2011 through July 2011 constitute a

12   "re-review" and thereby their performance pursuant to the TPP.  (ECF No. 23 at 11.)  However,

13   this is a factual dispute as to whether the correspondence from Defendants to Plaintiff establishes

14   performance under the TPP, which the Court cannot resolve on a motion to dismiss.  Thus, the

15   FAC has sufficiently pled the breach element.

16         Finally, Plaintiff has met the damages element.  Plaintiff alleges he was damaged as a

17   result of the foreclosure of his home.  (ECF No. 21 at ¶ 38.)  Additionally, Plaintiff alleges his

18   "credit rating and credit history has been degraded."  (ECF No. 21 at ¶ 39.)  Thus, Plaintiff has

19   sufficiently pled factual allegations that support damages.

20         For the foregoing reasons, the Court finds that Plaintiff has sufficiently set forth factual

21   allegations to support a breach of contract claim.  Accordingly, Defendants motion to dismiss

22   Plaintiff's First Cause of Action is DENIED.

23                 B.        Promissory Estoppel (Second Cause of Action)

24         Plaintiff brings a claim for promissory estoppel against Defendants alleging Plaintiff

25   detrimentally relied on Defendants' promise to re-review his loan for modification and not to

26   proceed with foreclosure proceedings while Plaintiff's modification was under review.  (ECF No.

27   21 at ¶ 43.)  In reliance on Defendants' promise, Plaintiff states that he opted not to pursue other

28   options that were available to him, including seeking to sell his property.  (ECF No. 21 at ¶ 43.)

9

1  Defendants claim that "Plaintiff cannot establish that any clear and enforceable promise not to

2  foreclose was in effect at the time of the sale in September 2011 and/or that Defendants were in

3  breach of any promise made to Plaintiff."  (ECF No. 23 at 13.)  Further, Defendants contend that

4  Plaintiff cannot and does not plead facts demonstrating detrimental reliance because Plaintiff was

5  obligated to make payments on the loan.  (ECF No. 23 at 8.)

6       "Under California law, the elements of promissory estoppel are (1) a promise clear and

7  unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance

8  must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured

9  by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012)

10 (citing *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887 (2005)).  "To be enforceable, a promise

11 need only be definite enough that a court can determine the scope of the duty[,] and the limits of

12 performance must be sufficiently defined to provide a rational basis for the assessment of

13 damages." *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 949 (E.D. Cal. 2015)

14 (quotation marks and citations omitted).  Courts have consistently held that a TPP can contain a

15 promise definite enough for a court to determine the scope of the parties' duties.  *Wigod*, 673 F.3d

16 at 566 (holding that the plaintiff sufficiently alleged that the defendant "made an unambiguous

17 promise that if she made timely payments and accurate representations during the trial period, she

18 would receive an offer for a permanent loan modification").  Here, the alleged promise states:

19
20     To accept this offer and enter into the Trial Period Modification, all borrowers
       must sign both copies of the enclosed Trial Period Plan. You must then return
21     BOTH signed copies to us – along with your first trial period payment in the
       amount of $ 2,908.43 no later than 06/01/2010. . . . Your remaining trial period
22     payments in the amount of $ 2,908.43 will be due on or before 07/01/2010 and
       08/01/2010. . . . Once your final payment has been submitted, contact us for a re-
       review of your modification.

23 (ECF No. 21-1 at 2.)  The TPP further states that "[t]hese payments are an estimate of what your

24 payment(s) will be IF we are able to modify your loan under the terms of the program. . . . As

25 long as you comply with the terms of the Trial Period Plan, we will not start foreclosure

26 proceedings or conduct a foreclosure sale."  (ECF No. 21-1 at 4.)

27       First, the alleged promises to re-review and refrain from proceeding with a foreclosure on

28

                                        10

1    the Subject Property are sufficiently pled as clear and unambiguous promises.  *See Sato v.*

2    *Wachovia Mortg., FSB*, No. 5:11–cv–00810 EJD (PSG), 2011 WL 2784567, at *10 (N.D. Cal.

3    July 13, 2011); *see also  Ramirez v. Wells Fargo Bank, N.A.*, No. C 10–05874 WHA, 2011 WL

4    1585075, at *5 (N.D. Cal. Apr. 27, 2011).  Accordingly, Defendants' promise to execute a

5    foreclosure date only after reviewing Plaintiff's loan for a modification is sufficiently clear and

6    unambiguous.

7         Second, as to the reliance element and whether that reliance was reasonable, Plaintiff has

8    sufficiently alleged he made all of the payments pursuant to the TPP and suspended the sale of

9    his home based on Defendants' alleged promise to review his loan for modification and postpone

10   foreclosure.  (ECF No. 21 at ¶ 43); *see also Alimena v. Vericrest Financial, Inc.*, 964 F. Supp. 2d

11   1200, 1218–19 (2013) (holding that plaintiffs sufficiently alleged reasonable and foreseeable

12   reliance on the lender's promise by "tendering four trial payments of $1667 and submitting the

13   requested documentation").  Finally, the reliance was to Plaintiff's detriment because his home

14   was foreclosed and he had to move his family.  (ECF No. 21 at ¶ 44.)

15        Thus, the Court finds that Plaintiff has stated a claim for promissory estoppel, and

16   Defendants' motion to dismiss Plaintiff's Second Cause of Action is DENIED.

17                    C.        Implied Covenant of Good Faith and Fair Dealing (Third Cause of Action)

18        Plaintiff alleges that "[b]y proceeding to sell the property despite having specifically

19   promised to not do so as long as [Plaintiff] remained in the TPP," Defendants acted in bad faith.

20   (ECF No. 21 at ¶ 49.)  Defendants contend that Plaintiff's claim fails because Plaintiff fails to

21   adequately state a cause of action for breach of written contract, and this claim is derivative of

22   the breach of contract claim.  (ECF No. 23 at 10.)  Additionally, Defendants assert that Plaintiff

23   fails to state a tort claim for bad faith because it is time barred. (ECF No. 23 at 10.)  In response,

24   Plaintiff asks the Court to grant leave to amend in order to plead facts illustrating that Plaintiff

25   could not have discovered Defendants alleged wrongdoing.  (ECF No. 27 at 10.)

26        "Under California law, all contracts contain an implied covenant of good faith and fair

27   dealing.  This covenant requires each contracting party to refrain from doing anything to injure

28   the right of the other to receive the benefits of the agreement."  *San Jose Prod. Credit Ass'n v.*

11

1    *Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984) (citing *Egan v. Mutual of Omaha*

2    *Insurance Company*, 24 Cal. 3d 809, 818 (1979).  "It is universally recognized [that] the scope of

3    conduct prohibited by the covenant of good faith is circumscribed by the purposes and express

4    terms of the contract."  *Gardner v. Nationstar Mortg. LLC*, No. 2:14–cv–1583–TLN–CKD, 2015

5    WL 1405539, at *6 (E.D. Cal. March 26, 2015) (citing *Jenkins v. JP Morgan Chase Bank, N.A.*,

6    216 Cal. App. 4th 497, 524 (2013)).

7            This Court finds that Plaintiff sufficiently pled facts to support the existence of a contract.

8    *See* Section IV.A, *supra.*  Additionally, Plaintiff alleges that Defendants have frustrated his right

9    to receive certain benefits of the TPP, namely the re-review of his loan modification and

10   forbearing foreclosure.  (ECF No. 21 at ¶ 48.)  Plaintiff alleges he did "everything the TPP and

11   [Defendants] required of him" and thus Plaintiff had the right to benefit from a re-review and an

12   abstention from foreclosure.  (ECF No. 21 at ¶ 48.)  Given that Plaintiff alleges he complied with

13   the terms of the TPP, Defendants were required to comply with the terms of the TPP in good

14   faith.

15           Although it is unclear from Plaintiff's FAC as to whether he pleads an implied covenant

16   of good faith and fair dealing based on principles of tort, his opposition clarifies that he intends

17   to do so.  (ECF No. 27 at 12–13.)  While Defendants contend that this tort claim is time barred,

18   Plaintiff asserts that equitable tolling should apply.  (ECF No. 27 at 13.)  Specifically, Plaintiff

19   alleges he could not discover Defendants alleged wrongdoing because "while on a jobsite in

20   Texas on November 27, 2012, [Plaintiff] was piloting a helicopter which crashed to the ground

21   due to a mechanical failure / or maintenance issue."  (ECF No. 27 at 13.)  As a result of the

22   crash, Plaintiff sustained substantial injuries that required hospitalization.  (ECF No. 27 at 13.)

23   Plaintiff alleges that "because this horrific incident occurred well within two years of the

24   wrongful foreclosure date [September 12, 2011], the statute of limitations should be tolled."

25   (ECF No. 27 at 20.)

26           Generally, a claim for contractual breach of the implied covenant of good faith and fair

27   dealing is governed by a four-year statute of limitations, while a tort action is governed by a two-

28   year statute.  *See* Cal. Code Civ. Proc., § 337, subd. (1); *compare* Cal.Code Civ. Proc., § 339

(two-year limitations period for tort actions, including tortious breaches of the implied covenant); Casey *v. Metropolitan Life Ins. Co.*, 688 F. Supp. 2d 1086, 1100 (E.D. Cal. 2010) (same).  The FAC alleges the tortious act occurred on September 12, 2011, when Defendants foreclosed on the Subject Property.  (ECF No. 21 at ¶ 30.)  Pursuant to the two-year statute of limitations, Plaintiff had to file his complaint no later than September 12, 2013.  Here, Plaintiff did not file his state claim until July 16, 2014.  Thus, under the two-year statute of limitations, Plaintiff's breach of implied covenant and good faith claim pursuant to the principles of tort law is likely time barred.

However, the Court will allow Plaintiff to amend his complaint to present factual allegations that support his equitable tolling claim.  Federal Rule of Civil Procedure 15 encourages the courts to grant leave to amend liberally.  *See Thinket Ink Information Resources, Inc. v. Sun Microsystems*, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.").  However, the Court cautions Plaintiff that in his second amended complaint, Plaintiff must allege sufficient facts that support an excusable delay and an exercise of reasonable diligence during the statutory period to support a claim for tolling.  *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  The Court does not believe that the facts provided in Plaintiff's opposition can meet this standard.  Therefore, any amendments to the complaint must be more substantive for the Court to find that tolling applies.

Accordingly, Defendants motion to dismiss the Third Cause of Action is DENIED as to the contract claim and GRANTED as to the tort claim, with leave to amend.

### D. Fraud—False Promise (Fourth Cause of Action)

Plaintiff asserts that Defendants did not intend on performing their promises when they were made as evidenced by Defendants' failure to return Plaintiff's calls or letters to re-review his loan modification.  (ECF No. 21 at ¶ 55.)  Plaintiff contends that evidence of Defendants' lack of intention to comply with their promises included, but were not limited to, proceeding with having a notice of default issued and recorded, and actually proceeding with the foreclosure sale on September 12, 2011.  (ECF No. 21 at ¶ 55.)  Defendants state that Plaintiff's claim must

1   be dismissed for failure to comply with the level of particularity required under Rule 9(b) when

2   pleading a fraud claim.  (ECF No. 23 at 11.)

3          "In all averments of fraud or mistake, the circumstances constituting fraud or mistake

4   shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "Therefore, in an action based on state

5   law, while a district court will rely on state law to ascertain the elements of fraud that a party

6   must plead, it will follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded

7   with particularity."  *Marolda v. Symantec Corp*., 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009); *see*

8   *also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  "[W]hen the claim is

9   'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity

10  requirement."  *Marolda*, 672 F. Supp. 2d at 997 (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d

11  1097, 1104 (9th Cir. 2003)).  Rule 9(b) requires the plaintiff to allege "the who, what, when,

12  where, and how" of the alleged fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

13  Cir. 1997).  A plaintiff must describe the alleged fraud in specific enough terms "to give

14  defendants notice of the particular misconduct so that they can defend against the charge."

15  *Kearns*, 567 F.3d at 1124.  "The requirement of specificity in a fraud action against a corporation

16  requires the plaintiff to allege the names of the persons who made the allegedly fraudulent

17  representations, their authority to speak, to whom they spoke, what they said or wrote, and when

18  it was said or written."  *Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111, 1127

19  (N.D. Cal. 2009) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)).

20         The Court finds that Plaintiff has met this requirement.  Plaintiff states that a

21  misrepresentation occurred when Defendants failed to honor their promise to re-review his

22  modification and failed to forbear from selling the Subject Property despite Plaintiff fully

23  complying with the terms of the TPP.  (ECF No. 21 at ¶ 53.)   Specifically, Plaintiff alleges that

24  the misrepresentation was contained in First Horizon's TPP Agreement.  (ECF No. 1 at ¶ 54.)

25  Plaintiff then goes on to state that the misrepresentations continued, and Defendants' intent to

26  defraud was exhibited, in the ensuing correspondence between the parties, which Plaintiff

27  identifies and attaches as exhibits to his complaint.  (ECF No. 1 at ¶¶ 22–28, 55.)  The Court

28  finds that these allegations, which specifically allege the written agreement and correspondence

14

1    said to be evidence of the fraud, and the attachment of those specific items, is more than

2    sufficient to meet the standard set forth under Rule 9(b).

3        Therefore, Defendants' motion to dismiss Plaintiff's Fourth Cause of Action is DENIED.

4        E.    Unlawful Business Practices (Fifth Cause of Action)

5        The FAC alleges that Defendants engaged in unlawful business practices by "breaching

6    their obligations under the April 2010 TPP Agreement by failing to honor the terms of the

7    contract and selling the subject property at a foreclosure auction."  (ECF No. 21 at ¶ 63.)

8    Defendants contend that Plaintiff lacks standing under California's Unfair Competition Law

9    (UCL) because he did not plead any facts to "show any economic injury capable of being

10   redressed by Defendants in the form of restitution."  (ECF No. 23 at 18.)   Defendants also

11   contend that even if Plaintiff does have standing, the claim fails as it is derivative of the breach

12   of contract and fraud claims.  (ECF No. 23 at 13.)

13       "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

14   fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

15   *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003); Cal.

16   Bus. & Prof. Code § 17200.  In sum, an act violates the UCL if it is "unlawful," "unfair" or

17   "fraudulent."[4]  *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  "[A]n action

18   based on [the UCL] to redress an unlawful business practice 'borrows violations of other laws

19   and treats these violations . . . as unlawful practices, independently actionable under section

20   17200 et seq. and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exchange*

21   *v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  To establish standing to assert a UCL claim, a

22   plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair

23   competition."  *Id.* at 1203–04 (quoting Cal. Bus. & Prof. Code § 17204).  "[D]amage to credit is

24   a 'loss of money or property' within the meaning of the UCL."  *Rubio*, 613 F.3d at 1204.

25       First, the Court finds that Plaintiff has standing because he has adequately pleaded an

26   injury in fact.  Plaintiff alleges he suffered from "having his home and property sold at the

27   _____

[4]      In the FAC, Plaintiff also alleges that Defendants engaged in unfair and fraudulent conduct pursuant to the
UCL.  (ECF No. 21 ¶ 64–65.)  The Court does not address these claims because it finds that Plaintiff sufficiently pled
28   a UCL claim within the 'unlawful' prong of California Business and Professions Code section 17200.

1  trustee's sale and his subsequent eviction from his home." (ECF No. 21 at ¶ 39.) Additionally,

2  Plaintiff alleges his credit rating and credit score continues to suffer. (ECF No. 21 at ¶ 39);

3  *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) (finding that damage

4  to credit was loss of money or property pursuant to the UCL). Further, Plaintiff infers that these

5  economic injuries are the result of Defendants' false promise to review his loan for a permanent

6  loan modification after he completed his TPP payments. (ECF Nos. 21 at ¶ 66 & 27 at 17.)

7  Accordingly, Plaintiff has sufficiently pled that he suffered an economic injury and therefore has

8  standing under the UCL.

9        Second, the Court further finds that Plaintiff's claim cannot be dismissed simply because

10  it is derivative of his other claims. "According to the California Supreme Court, the UCL

11  borrows violations of other laws and treats them as unlawful practices independently actionable

12  under the UCL." *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1076 (E.D. Cal. 2012) (citing

13  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992)). Plaintiff contends that

14  his UCL claim is based on each allegation made in the FAC. (ECF No. 21 at ¶ 47.)

15  Consequently, Plaintiff's unlawful UCL claim is tethered to his claims for purported breach of

16  contract (the First Cause of Action), promissory estoppel (Second Cause of Action), and breach

17  of the implied covenant of good faith and fair dealing (Third Cause of Action). As discussed

18  earlier, Plaintiff has pled sufficient facts to support a claim for these three claims and thereby has

19  sufficiently pled a claim under the unlawful prong of section 17200.

20        Therefore, Defendants' motion to dismiss Plaintiff's Fifth Cause of Action is DENIED.

21            F.      Intentional Infliction of Emotional Distress (Sixth Cause of Action)

22        The FAC alleges that Defendants acted in "extreme and outrageous conduct with the

23  intent to cause, or with reckless disregard of the probability of causing [Plaintiff's] emotional

24  distress." (ECF No. 21 at ¶ 73.) In response, Defendants contend that the claim is barred by the

25  applicable statute of limitations. (ECF No. 23 at 19.)

26        The statute of limitations for a claim of intentional infliction of emotional distress (IIED)

27  in California is two years. Cal. Civ. Proc. § 335.1. "Generally, a limitations period begins to run

28  upon the occurrence of the last fact essential to the cause of action." *Blakenchip v. Citimortgage,*

1   *Inc.*, No. 2:14–2309 WBS AC, 2014 WL 6835688, at *7 (quoting *Pugliese v. Superior Court*,

2   146 Cal. App. 4th 1444, 1452 (2d Dist. 2007)).  There is an exception to this rule "[w]here a tort

3   involves a continuing wrong."  *Id.*  In that case, "the statute of limitations does not begin to run

4   until the date of the last injury or when the tortuous acts cease."  *Id.*

5           Plaintiff purports that the continuing wrong exception applies here because he continues

6   to suffer damages including having his home and property sold at the trustee's sale, his

7   subsequent eviction, and the degradation of his monthly credit report as a result of Defendants

8   alleged wrongdoing.  (ECF No. 21 at ¶ 39.)  Moreover, Plaintiff asserts that Defendants continue

9   to report the foreclosure to credit reporting agencies, and thereby continue to cause Plaintiff

10  harm.  (ECF No. 21 at ¶ 77.)  However, these are not ongoing wrongs, but ongoing damages

11  resulting from the alleged wrongful conduct.  (ECF No. 21 at ¶¶ 72, 73.)  Damages that are

12  ongoing do not support a claim for a continuing wrong.  *See Powell v. Wells Fargo Home*

13  *Mortgage*, Case No. 14–cv–04248–MEJ, 2015 WL 4719660, at *8 (N.D. Cal. 2015) (continuing

14  damages as a result of the underlying wrong does not support the "continuing wrong" doctrine)

15  (quoting *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001)).

16  Accordingly, the continuing wrong exception does not apply to Plaintiff's IIED claim.

17          Viewing the facts in a light most favorable to Plaintiff, Defendants alleged liability arose

18  in September 2011, when Defendants sold the Subject Property, which is the conduct that

19  Plaintiff claims is causing him severe emotional distress.  (ECF No. 21 at ¶ 30); *see also*

20  *Blankenchip v. Citimortgage, Inc.*, Civ. No. 2:14–2309 WBS AC, 2014 WL 6835688, at *7 (E.D.

21  Cal. Dec. 3, 2014) (finding the IIED claim arose on the sale date of the foreclosure of plaintiff's

22  home).  Plaintiff filed the instant action on August 21, 2014, which falls outside of the applicable

23  two-year statute.  (ECF No. 1-1 at 2.)

24          Plaintiff also alleges that equitable tolling applies to his IIED claim.  (ECF No. 27 at 18.)

25  Consequently, Plaintiff requests the Court to grant him leave to amend this claim so that he can

26  "plead facts showing that the statute of limitations on this cause of action should be tolled

27  because despite exercising reasonable diligence, [Plaintiff] could not have discovered, did not

28  discover, and was prevented from discovering, the wrongdoing complained of herein."  (ECF

No. 27 at 18.)  Based on the Court's understanding, Plaintiff again intends to argue that the Court should toll his IIED claim because of his involvement in a helicopter accident that occurred on November 27, 2012.  (ECF No. 27 at 20.)  The Court notes that this accident occurred 14 months after Defendants alleged wrongful conduct.  (ECF No. 27 at 20.)  Again, the Court postulates that granting Plaintiff an opportunity to amend his complaint will be futile.  However, the Court will allow Plaintiff to amend his complaint to make an equitable tolling argument as to his IIED claim.  The Court also reiterates to Plaintiff to allege specific factual allegations that would allow the Court to find an excusable delay existed and that Plaintiff exercised reasonable diligence.

Accordingly, Plaintiff's IIED claim is barred by the statute of limitations and Defendants' motion to dismiss this claim is GRANTED, with leave to amend.

### G.   Negligence (Seventh Cause of Action)

The FAC alleges that Defendants owed Plaintiff a duty of care in modifying his home loan pursuant to the *Biakanja* factors, they breached their duty by failing to act reasonably in processing Plaintiff's modification and subsequent foreclosure, and as a result of this unreasonable conduct, Plaintiff suffers damage to his credit, as well as "fees and penalties, increased interest and arrears."  (ECF No. 21 at ¶¶ 81–83.)  In their motion, Defendants contend that Plaintiff's negligence claim should be dismissed, because it was not timely filed.  (ECF No. 23 at 20.)

Under California law, negligence claims have a two-year statute of limitations.  Cal. Code of Civ. Proc. § 335.1.  However, the statute of limitations for negligence claims does not commence until "the cause of action is complete with all of its elements."  *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1251 (E.D. Cal. 2010) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999)).  Accordingly, the two-year statute of limitations begins to run after both: (1) all of the elements of the negligence claim are complete; and (2) plaintiff knew or should have known of the claim.  *Id.* at 397.

Based on the factual allegations within the FAC, Plaintiff experienced an injury and became aware of his claim on September 12, 2011, when Defendants sold the Subject Property in a foreclosure sale.  (ECF No. 21 at ¶ 30.)  Accordingly, Plaintiff should have filed his claim

1  two years later.  However, Plaintiff filed his claim in state court on July 16, 2014, which falls

2  outside of the two year statute of limitations.

3       Plaintiff again requests leave to amend in order to plead facts that support tolling his

4  negligence cause of action.  (ECF No. 27 at 20.)  As discussed earlier, the Court grants Plaintiff

5  leave to amend and also requests Plaintiff to allege specific factual allegations that would allow

6  the Court to find an excusable delay existed and Plaintiff exercised reasonable diligence.

7       Therefore, Defendants' motion to dismiss Plaintiff's Seventh Cause of Action is

8  GRANTED, with leave to amend.

9      H.    Wrongful Foreclosure (Eighth Cause of Action)

10       Plaintiff alleges that "on March 2, 2010, there was an attempt to transfer the Deed

11  of Trust" on his property to Horizon but claims that this assignment was void.  (ECF No. 21 ¶

12  18.)  According to Plaintiff, "under IRC § 860 et seq., the TRUST was required to possess the

13  Deed of Trust to the Subject Loan within 90 days of the Closing Date of the Trust, as set forth in

14  the Pooling and Servicing Agreement in order to maintain the TRUST'S status as a REMIC."[5]

15  (ECF No. 21 at ¶ 85.)  The Subject Loan's closing date was October 30, 2006, and consequently,

16  Plaintiff alleges that the March 2, 2010, transfer date fell outside of the lawful time period to

17  transfer the trust.  (ECF No. 21 at ¶ 15.)  Because the transfer occurred after 90 days of the

18  closing date, Plaintiff alleges that the "TRUST did not hold (or own) the Deed of Trust to the

19  Subject Property" and therefore was not the rightful owner of the loan and had no legal right to

20  foreclose upon the property.[6]  (ECF No. 21 at ¶ 89.)  Defendants argue that Plaintiff does not

21  have standing to bring this claim.  (ECF No. 23 at 16.)  Alternatively, Defendants contend that

22  Plaintiff does not allege he suffered prejudice due to the assignment.  (ECF No. 23 at 16.)

23       "Wrongful foreclosure is an action in equity where a plaintiff seeks to set aside a

24  foreclosure sale." *Lane v. Vitek Real Estate Industries Group*, 713 F. Supp. 2d 1092, 1097 (E.D.

25

26  [5]    REMIC stands for "real estate mortgage investment conduit", and they facilitate the issuance of mortgage-backed securities by setting out minimum requirements that entities or taxpayers must meet in order to qualify.  26 U.S.C. § 860(a)–(g).

27  [6]    Plaintiff alleges that New York Trust Law is the operative law of the trust.  (ECF No. 21 ¶ 86.)  However, Plaintiff does not give any explanation as to why New York Trust Law is the operative law.  Defendants do not

28  address this issue.

1   Cal. 2010).  "A trustee or mortgagee may be liable to the trustor or mortgagor for damages

2   sustained where there has been an illegal, fraudulent, or willfully oppressive sale of property

3   under the power of sale contained in the mortgage or deed of trust." *Munger v. Moore*, 11 Cal.

4   App. 3d 1, 7 (1970); *see also Alvarado v. Bank of America*, N.A., No. CV F 12–2078 LJO GSA,

5   2013 WL 28584, at *9 (E.D. Cal. 2013).  Under California law, "a borrower [has] standing to

6   challenge an assignment of her note and deed of trust on the basis of defects allegedly rendering

7   the assignment void."  *Morgan v. Aurora Loan Services, LLC*, No. 14–55203, 2016 WL

8   1179733, at *2 (9th Cir. March 28th, 2016) (citing *Yvanova v. New Century Mortg. Corp.*, 62

9   Cal. 4th 919, 931 (Cal. 2016)).

10          However, a borrower does not have standing to challenge defects in trust assignments

11   that are merely voidable.  *Morgan*, No. 14–55203 at *3; *Yvanova*, 62 Cal. 4th at 939.  As the

12   California Supreme Court stated, "[w]hen an assignment is merely voidable, the power to ratify

13   or avoid the transaction lies solely with the parties to the assignment" and consequently, a

14   plaintiff who sets forth a claim on defects within the assignment that render it voidable is

15   attempting to "assert an interest belonging solely to the parties to the assignment rather than to

16   herself."  *Id.* at 936; *see also Lundy v. Selene Finance, LP*, Case No. 15-cv-05676-JST, 2016 WL

17   1059423, at *9 (N.D. Cal. March, 17, 2016).

18          Here, Plaintiff alleges that pursuant to New York law, the assignment of his Deed of

19   Trust to Defendants was void, because Defendants received the assignment beyond the 90 day

20   period of its closing date.  (ECF No. 21 at ¶ 87.)  However, because "an act in violation of a trust

21   is voidable—not void—under New York law," which allegedly governs the pooling and

22   servicing agreement at issue in this case, Plaintiff lacks standing.  *Morgan*, No. 14–55203, at *2;

23   *see also Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87–90 (2d Cir. 2014) (finding

24   that generally New York authority finds that "any failure to comply with the terms" of the

25   pooling servicing agreements does not render the "acquisition of plaintiffs' loans and mortgages

26   void" because "[u]nder New York law, unauthorized acts by trustees are generally subject to

27   ratification by the trust beneficiaries").  Accordingly, the Court concludes that Plaintiff does not

28   have standing to bring a wrongful foreclosure claim based on a defective violation of his trust

pursuant to New York law against Defendants.

Therefore, Defendants' Motion to Dismiss Plaintiff's Eighth Cause of Action is GRANTED, with leave to amend.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss Plaintiff's FAC.  (ECF No. 21.)  The Court orders the following:

1. Defendants' request to dismiss Plaintiff's First Cause of Action is DENIED;

2. Defendants' request to dismiss Plaintiff's Second Cause of Action is DENIED;

3. Defendants' request to dismiss Plaintiff's Third Cause of Action pursuant to breach of contract is DENIED and GRANTED pursuant to tort with leave to amend;

4. Defendants' request to dismiss Plaintiff's Fourth Cause of Action is DENIED;

5. Defendants' request to dismiss Plaintiff's Fifth Cause of Action is DENIED;

6. Defendants' request to dismiss Plaintiff's Sixth Cause of Action is GRANTED with leave to amend;

7. Defendants' request to dismiss Plaintiff's Seventh Cause of Action is GRANTED with leave to amend; and

8. Defendants' request to dismiss Plaintiff's Eighth Cause of Action is GRANTED with leave to amend.

Plaintiff is hereby granted leave to file a second amended complaint within thirty (30) days from entry of this Order.

IT IS SO ORDERED.

Dated: May 4, 2016

_____
Troy L. Nunley
United States District Judge